S09A1126. SHAW v. THE STATE.
(686 SE2d 760)

HINES, Justice.

James Lee Shaw appeals his convictions for malice murder and possession of a knife during the commission of a felony in connection with the death of Rollie Hardwick. For the reasons that follow, we affirm.[1]

Construed to support the verdicts, the evidence showed that

---

[1] Hardwick was killed on August 22, 2002. On December 10, 2002, a Fulton County grand jury indicted Shaw for malice murder, felony murder while in the commission of aggravated assault, aggravated assault, and possession of a knife during the commission of a felony. Shaw was tried on August 2, 2004 and was found guilty on all counts. On August 6, 2004, Shaw was

Shaw and Hardwick were co-workers at a restaurant and frequently bickered. As a result, three days before Hardwick was killed, their supervisor informed them that one of them would be transferred to another location in the near future, stating: "I don't care which one it is. You guys can choose among yourself [sic] who wants to leave."

The stabbing occurred in a restroom in which employees often changed clothes before and after work. After the shift that Shaw and Hardwick worked, Karl Pleasant, a co-worker, encountered Shaw wiping the floor outside the restroom with his shirt; Shaw said that Pleasant needed to get help for Hardwick, who had been stabbed. Pleasant opened the restroom door and saw Hardwick's body lying on the floor; Hardwick was wearing a shirt, shoes, and socks.

A worker from a neighboring business came to the restaurant, approached Shaw, and asked if he was cut on the hand; Shaw said no. Shaw opened his hands, revealing at least one cut, and said that he had stabbed Hardwick after the two argued over a pickle, and that: "We had some argument before then . . . but it's over. So everything is over now." Shaw said he did not know how he might have been cut.

Police officers had been summoned to the restaurant and Shaw told the first law enforcement investigator to approach him that: "I did it and I want to tell you about it"; the investigator stopped him and advised him of his *Miranda*[2] rights. When questioned by an investigator, Shaw gave different versions of the events. In each of the accounts, Shaw stated that he was acting in self-defense, but was inconsistent as to who was in the restroom at the time of the killing, where exactly in the restroom specific incidents occurred, and what items were in the restroom before his arrival as opposed to those objects he placed there. The investigator noticed a cut on one of Shaw's hands that the investigator believed could be caused by Shaw wielding the knife himself.

Hardwick died of multiple stab wounds to the torso. A knife was left in Hardwick's chest, its tip at a depth of seven and one-quarter inches. Another wound was over six inches deep, and one abdominal wound had penetrated his body to the extent that his intestines had extended several inches outside his body. There were multiple incised wounds on Hardwick's face, and his hands displayed 29 defensive

---

sentenced to life in prison for malice murder, and a consecutive term of five years in prison for possession of a knife during the commission of a felony; the conviction for felony murder stood vacated by operation of law, and the aggravated assault charge merged with the conviction for malice murder. See *Malcolm v. State*, 263 Ga. 369, 372-374 (4), (5) (434 SE2d 479) (1993). Shaw moved for a new trial on August 12, 2004, and amended the motion on February 12, 2007. The motion was denied on January 26, 2009, and Shaw filed a notice of appeal on January 29, 2009. His appeal was docketed in this Court on March 31, 2009, and submitted for decision on May 25, 2009.

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

wounds. Blood covered the sinks, stalls, and walls of the restroom.

At trial, Shaw gave a new version of the events surrounding the killing. Shaw testified that: Hardwick approached him in the restroom with a knife and stated, "You pussy motherfucker, I'm going to make you suck my dick"[3]; Hardwick appeared to be "high"; Shaw smelled cocaine; the men struggled; Shaw was cut twice, on the thumb and forearm; "while we was in a struggle, I remember the knife got embedded in him on the right side"; Shaw "snapped" and only remembered stabbing Hardwick the first and last time; Shaw had been sexually abused twice as a child; he was determined not to allow it to happen again; because he was "scared and embarrassed," he did not tell either the investigating law enforcement officers or his prior trial counsel that Hardwick had tried to sexually assault him; and, for those same reasons, he did not tell a psychiatrist who interviewed him while he was incarcerated awaiting trial about the childhood molestation. Evidence was introduced that cocaine was found in Hardwick's blood.

1. The evidence was sufficient to enable a rational trier of fact to find Shaw guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Shaw claims that his trial counsel failed to provide effective representation. In order to prevail on this claim, Shaw must show both that counsel's performance was deficient, and that the deficient performance was prejudicial to his defense. *Smith v. Francis*, 253 Ga. 782, 783 (1) (325 SE2d 362) (1985), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). To meet the first prong of the required test, the defendant must overcome the "strong presumption" that counsel's performance fell within a "wide range of reasonable professional conduct," and that counsel's decisions were "made in the exercise of reasonable professional judgment." Id. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the particular circumstances of the case. Id. at 784. To meet the second prong of the test, the defendant must show that there is a reasonable probability that, absent any unprofessional errors on counsel's part, the result of his trial would have been different. Id. at 783. " 'We accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the

---

[3] On cross-examination, Shaw testified that Hardwick's words were: "Motherfucker, son of a bitch, I'm going to make you suck my dick." The State asked: "Okay. So now it's MF"er, son of a bitch, suck my penis?" Shaw replied: "Son of a bitch, motherfucker."

232

facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

Shaw contends that trial counsel should have procured and introduced a certified copy of a criminal conviction against Hardwick in 1976, in which Hardwick pled guilty to a charge of aggravated assault with intent to rape a woman. Shaw contends that this would have supported his testimony that he acted in self-defense after Hardwick attempted a homosexual attack upon him.

> Generally, the character of the homicide victim is not relevant or admissible in the trial of the defendant charged with killing the victim since it is "as unlawful to kill a violent person as to kill a nonviolent person." *Harrison v. State*, 251 Ga. 837 (3) (310 SE2d 506) (1984). See also *Johnson v. State*, 270 Ga. 234 (3) (507 SE2d 737) (1998). However, evidence of a victim's specific acts of violence against third parties is admissible when a defendant claims justification and makes a prima facie showing thereof, follows procedural requirements, and establishes the existence of the prior violent acts by competent evidence. *Graham v. State*, 274 Ga. 696 (3) (558 SE2d 395) (2002). This exception to the general rule has been carved out in order that one claiming to have acted in self-defense can show the victim's character for violence or the victim's tendency to act in accord with that character as it relates to the claim of justification. *Barber v. State*, 268 Ga. 156 (2) (486 SE2d 353) (1997). The burden is on the proponent of the evidence to establish that the victim's prior acts involved violence. *Bennett v. State*, 265 Ga. 38 (3) (453 SE2d 458) (1995).

*Prather v. State*, 275 Ga. 268, 269-270 (2) (564 SE2d 447) (2002).

But, Shaw fails to meet his burden under *Strickland*, supra. First, at the October 2008 hearing on his motion for new trial, Shaw introduced no evidence that trial counsel's performance was deficient. Counsel testified at the hearing on the motion for new trial that at the time of trial, he was aware of the conviction and attempted to procure evidence of it from the office of the clerk of court, but "we were unable to obtain it." He also attempted to locate the victim of the 1976 crime, an effort that included a visit to the Department of Health, but was unable to find her. Although Shaw introduced a copy of the conviction at the motion for new trial hearing, no evidence was presented establishing what efforts a reasonably professional attorney should have made to procure it that trial counsel did not exert, nor was there presented any evidence that such efforts would have been fruitful at the time of Shaw's 2004

trial.[4] It is not deficient performance to fail to introduce evidence of a prior act by the victim if no credible evidence of that act can be found. See *Potter v. State*, 273 Ga. 325, 326 (540 SE2d 184) (2001).

Even assuming that Shaw met his burden of showing that trial counsel's performance was deficient, he fails to establish that, had counsel procured a copy of the conviction and attempted to have it admitted into evidence, the conviction would have been admitted.

> Evidence that impugns a victim's character cannot be admitted unless it has some factual nexus with the conclusion for which it is being offered. [Cits.] Sheer speculation is insufficient. Otherwise, character evidence would be admitted routinely, disguised as relevant to whatever speculative theory the proponent managed to put forth.

*Hinton v. State*, 280 Ga. 811, 817 (5) (631 SE2d 365) (2006). Evidence of the victim's character is admissible to show "the victim's tendency to act in accord with [his] character as it relates to the claim of justification." *Prather v. State*, 275 Ga. 268, 270 (2) (564 SE2d 447) (2002). Shaw now contends that Hardwick's prior conviction for the aggravated assault with intent to rape a woman supports Shaw's trial testimony that Hardwick attempted to commit a homosexual assault upon him, and that he had to defend himself. However, Shaw does not cite to this Court any authority supporting the conclusion that a prior violent heterosexual assault by Hardwick corroborates Shaw's claim of an attempted violent homosexual assault upon him by Hardwick, and Shaw presented no authority for that proposition during the hearing on the motion for new trial.

Further, even if Hardwick's conviction was relevant and admissible, considering the attenuated nature of Hardwick's 28-year-old crime, coupled with the evidence of Shaw's guilt, had the conviction been introduced into evidence, there is no reasonable probability that it would have produced a different result in Shaw's trial. Shaw gave multiple conflicting versions of the killing prior to his trial testimony, and the physical evidence did not support a finding of justification; Hardwick had been stabbed multiple times, and had 29 defensive cuts on his hands. "Under these circumstances, [Shaw] cannot demonstrate a reasonable probability that, but for the assumed deficient representation by counsel, the outcome of [his] trial would have been different. [Cit.]" *Allen v. State*, 271 Ga. 502,

---

[4] At the hearing on the motion for new trial, Shaw's appellate counsel stated: "We were able to go to the Clerk's Office, to bring the GCIC, and able to get this conviction. They were able to get it for us. It didn't take a lot of effort to get it so I don't. . . . [Trial counsel] says that, you know, if he could have gotten it, he would have gotten it."

503 (2) (521 SE2d 190) (1999). Accord *Stanley v. State*, 283 Ga. 36, 40-41 (3) (c) (656 SE2d 806) (2008).

The trial court did not err in denying Shaw's motion for new trial on the ground of ineffective assistance of counsel.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 23, 2009.

*Eric J. Taylor*, for appellant.

*Paul L. Howard, Jr., District Attorney, Marc A. Mallon, Bettieanne C. Hart, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Christopher R. Johnson, Assistant Attorney General*, for appellee.